UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMBRA BROWN                              Case No. 08-11375

        Plaintiff,                    District Judge Victoria A. Roberts

v.                                       Magistrate Judge R. Steven Whalen

STEVEN DRAKE, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

Before the Court is Defendants Mary Cooke, Harold White and Will Riley's *Motion for Summary Judgment* [Docket #14], filed August 18, 2008 and Defendant Sherry L. Burt's *Motion for Summary Judgment* [Docket #21], filed September 3, 2008, which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

For the reasons set forth below, I recommend that both motions be GRANTED.

**I.   FACTUAL BACKGROUND**

Plaintiff, a Michigan Department of Corrections ("MDOC") inmate formerly housed at the Parnall Correctional Facility ("SMT") in Jackson, Michigan, makes the following allegations. In April, 2006, Plaintiff, working at Michigan State Industries ("SMI"), witnessed an incident between correctional officers Defendant S. Drake[1] and non-Defendant

---

[1] Defendant Drake is not a party to this motion.

Meril. *Complaint* at ¶¶12-15. In June, 2006, Plaintiff was asked to make a statement regarding the April, 2006 incident. *Id.* at ¶¶16-18. Expressing fear that Defendant Drake would retaliate against him, Plaintiff agreed to submit a statement after being assured by an administrative assistant at the SMT's control center that the statement would be kept confidential. *Id.* at ¶¶19-21.

On August 21, 2006, Plaintiff was passing through security after leaving his shift at SMI when Defendant Drake "discovered" metal (a contraband item) hidden in Plaintiff's hat. *Id.* at ¶¶22-24. Plaintiff was immediately handcuffed and escorted to the SMT's control center, at which time he informed the investigating officer that Defendant Drake had planted the metal in his hat in retaliation for his June, 2006 statement. *Id.* at ¶¶25-26. Drake charged Plaintiff with major misconduct for "Possession of Dangerous Contraband" and smuggling. *Id.* at ¶27. Plaintiff was then placed in administrative segregation. *Id.* at ¶¶27-28. He was released from administrative segregation three days later, on August 24, 2006, but upon release was informed that he was being transferred to a different facility. *Id.* at ¶¶28-29. Before his transfer to the Hiawatha Correctional Facility on August 25, 2006, Anthony Harding, a coworker at SMI, informed Plaintiff that Defendant Drake had blackmailed Harding into planting metal in Plaintiff's hat. *Id.* at ¶30.

On September 21, 2006, Plaintiff was informed by an MDOC official that Drake had been dismissed as a result of his April, 2006 altercation with Meril and was seeking reinstatement *Id.* at ¶¶33-34. Because Drake's retaliation led to Plaintiff's transfer and the loss of a "good paying" prison job, Plaintiff declined the official's offer to testify against

Drake. *Id.* at ¶34. The August 21, 2006 major misconduct ticket written by Drake was later dismissed. *Id.* at ¶35. On October 26, 2007, Plaintiff filed a grievance against Drake, mailing the grievance form to SMI. *Id.* at ¶37. Defendant Mary Cooke, SMT's Grievance Coordinator rejected the grievance as untimely. *Id.* at ¶39. Plaintiff mailed a Step II grievance to SMT's current Warden, Defendant Burt on December 14, 2007. *Id.* at ¶41. On January 16, 2008, Burt denied Plaintiff's grievance at Step II. *Id.* at ¶43.

Plaintiff alleges violations of his First and Fourteenth Amendment rights as well as gross negligence by White, Burt, and Riley. Plaintiff seeks damages for extreme mental anguish and emotional distress, mortification, humiliation, and embarrassment, and the loss of his prison job.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary

judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23, 106 S.Ct. 2552.

### III. ANALYSIS[2]

---

[2] Because claims against all present Defendants are dismissible on their merits, the Court declines to address the additional argument that damages are unavailable for exclusively emotional injuries under 42 U.S.C. § 1997e(e), other than to note that in regard to Plaintiff's underlying claim of retaliation against Drake, the Sixth Circuit has "allowed a prisoner's First

### A. Defendant Cooke and Burt

Defendant Cooke, SMT's grievance coordinator, and current SMT Warden Defendant Burt argue that claims against them should be dismissed, contending that their involvement in these events is limited to processing Plaintiff's October, 2007 grievance. *Defendants' Brief* at 9-10. Citing *Gibson v. McEvers,* 631 F.2d 95, 98 (7th Cir. 1980), Defendants dispute Plaintiff's claim that Burt was required to restore his former position at SMI. *Defendants' Brief* at 9-10.

Claims against both Cooke and Burt are subject to dismissal. Cooke states that although the events in question took place in August, 2006, Plaintiff did not file a grievance for over 13 months. *Docket #14,* Exhibit C at ¶3. Citing MDOC P.D. 03.02.130, Cooke states that because Plaintiff failed to provide a valid reason for waiting over a year to file the grievance, it was rejected on the basis of untimeliness.[3] *Id.* at ¶¶3-4. While Plaintiff contends that the transfer hampered his ability to file a timely grievance, he offers no additional explanation for waiting over a year to submit his complaint. In addition, Defendant Burt

---

Amendment retaliation claim to proceed while holding that most of the prisoner's other claims were precluded by the physical injury requirement of 42 U.S.C. § 1997e(e)." *Boles v. Powell,* 2005 WL 3071775, *3 (E.D.Mich. 2005)(Duggan, J.);*Williams v. Ollis,* 2000 WL 1434459, *2 (6th Cir. 2000)(c*iting Canell v. Lightner,* 143 F.3d 1210, 1213 (9th Cir. 1998).

[3] Pursuant to P.D. 03.02.130, Plaintiff was required to file the grievance within five days of attempting to resolve the complaint informally. Even assuming that the transfer prevented him from making an informal resolution with Drake, his written grievance is tardy by more than one year.

states that although Plaintiff's grievance was grossly untimely, she nonetheless addressed the merits of the grievance in her Step II response, noting that Plaintiff was transferred from SMT on August 25, 2006 "based on information available at the time." *Docket #21,* Exhibit H at ¶4.

More significantly, Plaintiff's offers no factual allegations to support his implied claim that Cooke and Burt acquiesced in Drake's alleged retaliation by rejecting his grievance or that their actions prejudiced his ability to pursue the present claim. *See Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999)(no constitutional violation in denying grievances unless individuals "directly participated, encouraged, authorized or acquiesced in the claimed retaliatory acts"). Likewise, the allegation that Burt did not reinstate Plaintiff in his former job does not state a claim of constitutional magnitude. *See Gibson*, *supra,* 631 F.2d at 98 ("An inmate's expectation of keeping a certain prison job does not amount to a property or liberty interest entitled to protection under the due process clause").[4]

### B. Defendants White and Riley

Similarly, Plaintiff cannot show that either White or Riley were complicit in the alleged retaliation by Drake. Defendant White, SMT's former warden, disputes Plaintiff's claim that he violated Plaintiff's constitutional rights by failing to prevent Drake from writing the major misconduct ticket. Noting that P.D. 03.03.100 "allows for an employee to write a misconduct on a prisoner who is believed to have engaged in such behavior identified as

---

[4] However, the loss of Plaintiff's prison job would be relevant to the calculation of any eventual monetary damages against Defendant Drake.

a major misconduct infraction," White states that "[a]s Warden, I cannot prevent an employee from writing a misconduct on a prisoner." *Docket #14,* Exhibit B at ¶3. White notes further that "[t]he incident was referred for investigation . . . by [Defendant] Riley," acting [w]arden in [White's] absence." *Id.* at ¶4. Finally, White notes that Drake was eventually disciplined for writing the false misconduct. *Id.* at ¶4. Claims against White are also defeated by the undisputed fact that he was not present at the time of the incidents in question.

In turn, Defendant Riley, acting warden at the time of the August 21, 2006 incident, states as follows:

> "After prisoner Brown was initially interviewed when served with the major misconduct, staff suspected that the charge may have been false. An investigation started immediately [] on August 21, 2006. Prisoner Brown was released from temporary segregation ("bonded out") while the investigation continued. . . . Based on the investigation, I pulled this misconduct . . . [on] 9/25/06."

*Id. ,* Exhibit A at ¶¶4-5, Exhibit A-2.

Moreover, while acting warden Riley did not "prevent" Drake from writing the misconduct ticket, he prevented further harm to Plaintiff by launching an immediate investigation, releasing Plaintiff from segregation, and eventually "pulling" the ticket. Although Plaintiff was transferred before the completion of the investigation, he was not convicted of the false misconduct charges or deprived of good time credits. That Riley is now being sued is perhaps an example of the maxim that "no good deed goes unpunished."

For overlapping reasons, Plaintiff's "failure to train" allegations against White should be dismissed. First, pursuant to *Calwell v. Moore,* 968 F.2d 595, 600 (6th Cir. 1992), "[f]ailure to train liability . . . attaches to a municipality rather than to an individual defendant." Second, to the extent that Plaintiff alleges supervisory liability by Defendants White, Riley, or Burt, the Supreme Court has specifically held that in a §1983 action, liability cannot be based on a theory of *respondeat superior*, or mere supervisory liability. *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Because Plaintiff cannot make the threshold showing these individuals impliedly authorized, approved and knowingly acquiesced in Drake's allegedly unconstitutional conduct, the supervisory claims should be dismissed. *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984). To the contrary, Riley's prompt investigation and determination regarding the misconduct ticket and Burt's subsequent willingness to address the merits of Plaintiff's untimely grievance show not only the absence of a constitutional violation but that both Defendants properly fulfilled their supervisory duties.

### C. Qualified Immunity

Defendants also argue that dismissal should be granted on the basis of qualified immunity. Because I find that there was no violation of Plaintiff's constitutional rights, I agree that they are entitled to dismissal on this basis. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Under *Saucier*, the threshold question is whether a constitutional violation occurred. If it did not, a state officer or agent acting in the course of

his or her official duties is protected by qualified immunity.[5]

### D. Gross Negligence

Likewise, the state law claims of gross negligence (Counts VII-IX) against Defendants White, Burt, and Riley are subject to dismissal. M.C.L. 691.1407(7)(a) "defines 'gross negligence' as 'conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.'" *Jones v. Oakland County,* 585 F.Supp.2d 914, (E.D.Mich.2008)(Rosen, J.); *Jackson v. County of Saginaw,* 458 Mich. 141, 580 N.W.2d 870, 874 (1998). "The question whether a government employee's conduct amounts to gross negligence may be decided as a matter of law 'if, on the basis of the evidence presented, reasonable minds could not differ' on the outcome of this inquiry." *Id.* (*citing Jackson,* 580 N.W.2d at 873 (internal quotation marks and citation omitted).

As discussed above*,* Defendants have established that they were not complicit in Drake's alleged retaliation. Although Plaintiff also claims that Defendant White utilized "ineffective investigative procedures," and failed to "utilize[] closed-circuit television cameras to monitor the strip search of prisoners leaving [the] MSI [facility]," *Complaint* at ¶76, undisputed evidence shows that an investigation resulting in the withdrawal of the

---

[5] In *Pearson v. Callahan*, __ S.Ct. __, 2009 WL 128768 (2009), decided on January 21, 2009, the Supreme Court held that the two-step sequential analysis set forth in *Saucier* (first, determine whether there was a constitutional violation, and second, determine whether the constitutional right was clearly established) is no longer mandatory. Nevertheless, *Pearson* observed that the *Saucier* protocol, while not required, remains useful in particular cases. In this case, it is sufficient to say that under the first prong of *Saucier*, Plaintiff has not shown a constitutional violation as to these Defendants.

misconduct ticket was promptly opened and that Drake was disciplined and ultimately dismissed. Similarly, although Plaintiff contends that Burt was obligated to transfer him back to SMT and allow him to resume his work at SMI, *Docket #23* at Exhibit A2, he cannot demonstrate that his transfer from SMT or his inability to transfer back and resume his former job reflects grossly negligent or reckless conduct by Burt. Finally, while Plaintiff alleges that Riley "fail[ed] to come to [his] assistance" when Drake issued the misconduct ticket, *Complaint* at ¶83, Plaintiff has acknowledged the Riley "pulled" the ticket within five weeks of its issuance, preventing the loss of Plaintiff's good time credits. Because Defendants have shown that under the circumstances, "reasonable minds could not differ" regarding the propriety of their actions, the state law claims against them should be dismissed.

## IV.  CONCLUSION

For these reasons I recommend that Defendants Cook, White and Riley's Motion for Summary Judgment [Docket #14] and Defendant Burt's Motion for Summary Judgment [Docket #21] both be GRANTED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR

72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                                s/R. Steven Whalen
                                                                R. STEVEN WHALEN
                                                                UNITED STATES MAGISTRATE JUDGE

Dated:  February 12, 2009

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 12, 2009.

s/Susan Jefferson  
Case Manager